**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT**

| | |
|---|---|
| STANLEY BLACK & DECKER, INC., STANLEY LOGISTICS, LLC, and BLACK & DECKER (U.S.) INC., | **COMPLAINT** |
| Plaintiffs, | |
| v. | Civil Action No. 3:25-cv-00243 |
| PACIFIC MARKET INTERNATIONAL, LLC and PMI WW BRANDS LLC, | **JURY TRIAL DEMANDED** |
| Defendants. | |

<u>**COMPLAINT**</u>

Plaintiffs Stanley Black & Decker, Inc., Stanley Logistics, LLC, and Black & Decker (U.S.) Inc. (together, "Stanley"), by and through their undersigned counsel, hereby file suit against Defendants Pacific Market International, LLC and PMI WW Brands LLC (together, "PMI"), and allege as follows:

1.      This dispute arises from PMI's pervasive misuse of STANLEY in violation of the parties' agreement and federal and state law.

2.      For over 180 years, customers and communities have relied on and trusted Stanley products as they build, shape, and protect the world around us.  Stanley was founded in 1843, and it has since grown to sell and license a wide variety of STANLEY-branded products broadly to professionals and everyday consumers, including hand and power tools, indoor and outdoor hardware and equipment, storage and related accessories, knives, lighting, electrical equipment and accessories, clothing, gloves, hats, footwear, sanitizers, toys, bags, various mobile accessories (such as cases and chargers), and a long list of other products.

1

3.      Long after Stanley was established, PMI's predecessor began selling insulated containers (cups and bottles) labeled STANLEY.  Over a half century ago, Stanley and PMI's predecessor recognized both the extent of Stanley's senior rights and that PMI's use of STANLEY, if unconstrained, was likely to cause consumer confusion.  The parties thus entered into a series of agreements beginning in 1966 and continuing through 2012 to, among other things, prohibit PMI from using STANLEY as its company name, limit PMI's use of STANLEY to specific categories of goods, and place strict requirements on PMI's website domain name and on how PMI's advertising and goods had to be displayed and/or marked.

4.      But recently, PMI has willfully and intentionally ignored the carefully crafted restrictions of the parties' agreement, choosing instead to use STANLEY broadly, including in ways that the parties' agreement expressly prohibited and that infringe on Stanley's trademark rights.  PMI rode that misuse to viral success by, among other things, misappropriating STANLEY as its company name, expanding beyond the specified product categories, ignoring the contractual prohibitions relating to PMI's website domain name, advertising, and product marking, and confusing customers by selling hundreds and hundreds of millions (if not billions) of dollars of STANLEY-branded merchandise in violation of the parties' agreement.

5.      Stanley seeks to bring PMI's misuse of STANLEY to an end and to obtain compensation from PMI for its ill-gotten gains.

## I.    NATURE OF THE ACTION

6.      In 1966, in recognition of Stanley's rights and an effort to avoid customer confusion that would result if PMI used STANLEY unconstrained, Stanley and Aladdin Industries Incorporated ("Aladdin"), the predecessor to PMI, entered into what would be the first of a series of agreements designed to limit PMI's use of STANLEY (the "1966 Agreement").

Among other things, PMI's use of STANLEY was expressly restricted to "insulated containers adapted to keep their contents hot or cold."

7.    In 2012, the parties entered into a new agreement (the "2012 Agreement") to address PMI's then-noncompliant and encroaching use of STANLEY, which exceeded the scope of the previous agreement.  The 2012 Agreement reinforced that PMI's use of STANLEY was limited to use on food and beverage containers (and their carrying cases), provided restrictions relating to PMI's use of STANLEY as a company name, division, or proper noun, limited PMI's use of STANLEY in connection with any website domain name, and also placed restrictions on PMI's use of STANLEY on goods and advertising, all in an agreed-upon effort to differentiate Stanley's overall company and existing brand from PMI's limited use of STANLEY on food and beverage containers.

8.    Notwithstanding the restrictions in the 2012 Agreement, PMI recently breached that agreement and infringed Stanley's rights in order to seize upon an opportunity to expand and rebrand its product offerings.  Among other things, PMI stopped including "PMI" in its company name and changed its name to just STANLEY.  PMI identified itself as STANLEY in the marketplace, on products, in advertising, and in its website domain (www.stanley1913.com), all in willful and intentional violation of the parties' 2012 Agreement and Stanley's trademark rights.

9.    PMI's recent growth has been accompanied by several waves of negative press associating STANLEY with, for example, lead poisoning and burn hazards.  For example, in February 2024, PMI was sued by customers and there were widespread media reports regarding concerns that "Stanley" failed to disclose that its products contained lead.  Less than a year later, in December 2024, PMI announced a recall of approximately 2.6 million STANLEY-branded

steel travel mugs over potential burn hazards.  The recall notice was titled "Stanley Recalls 2.6 Million … Travel Mugs Due to Burn Hazard," implying that the defective products originated from Stanley, not PMI.  The notice further stated that "Stanley has received 91 reports worldwide, including 16 in the U.S., of the recalled travel mugs' lids detaching during use" and that consumers "should immediately stop using the recalled travel mugs and contact Stanley to receive a free replacement lid."  PMI's breach of contract and trademark infringement has unjustly shifted the reputational harm of PMI's defective products from PMI to Stanley.

10.    PMI's breach of contract and trademark infringement poses an imminent threat of irreparable harm to Stanley, the STANLEY brand, and the goodwill and advantageous business relationships that Stanley has earned by using STANLEY in commerce for almost two centuries. The longer PMI is permitted to advertise, market, and commercialize itself as STANLEY, and market and sell its products as STANLEY products without mentioning PMI, the greater the harm that it will impose on Stanley's reputation, value, and prestige, the STANLEY brand's position in the marketplace, and Stanley's ability to control its brand in the future.

11.    Stanley thus seeks monetary damages and equitable relief, including enjoining PMI's advertising, marketing, and sale of products using STANLEY, as well as any further acts of trademark infringement or breach of contract.

## II.    THE PARTIES

12.    Stanley Black & Decker, Inc. is a Connecticut corporation having its principal place of business located at 1000 Stanley Drive, New Britain, Connecticut, 06053.

13.    Stanley Logistics, LLC is a Delaware corporation having its principal place of business at 1000 Stanley Drive, New Britain, Connecticut, 06053.

14.    Black & Decker (U.S.) Inc. is a Maryland corporation having its principal place of business at 701 East Joppa Road, Towson, Maryland, 21286.

15.     On information and belief, Pacific Market International, LLC is a Washington company, having its principal place of business at 2401 Elliott Avenue, 4th Floor, Seattle, Washington, 98121.

16.     On information and belief, PMI WW Brands LLC is a Delaware company, having its principal place of business at 2401 Elliott Avenue, 4th Floor, Seattle, Washington, 98121.

### III.    JURISDICTION AND VENUE

17.     Federal subject matter jurisdiction is conferred by, *inter alia*, 29 U.S.C. § 1331 (federal question), 28 U.S.C. § 1338(a) (trademark claims), and the Lanham Act, 15 U.S.C. § 1051, *et seq*., including 15 U.S.C. §§ 1121, 1125.  This Court has diversity, supplemental, and/or pendant jurisdiction over Stanley's state law claims under at least 28 U.S.C. § 1332 and § 1367.

18.     This Court has personal jurisdiction over PMI pursuant to the Connecticut Long-Arm Statute, Connecticut General Statute § 33-1219(f) (as applicable to these proceedings under Rule 4 of the Federal Rules of Civil Procedure), and the Fourteenth Amendment of the United States Constitution because PMI is found, transacts, or is doing business in and otherwise maintains minimum contacts with the State of Connecticut.  Specifically, PMI entered into the 2012 Agreement with Stanley Black & Decker, Inc. and Stanley Logistics, LLC, which agreement provides that it shall be construed in accordance with the laws of the State of Connecticut.  Furthermore, a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, in Connecticut.  On information and belief, PMI has also directed a substantial amount of improper marketing and advertising towards Connecticut, and it has also marketed and sold in Connecticut a substantial number of products that breach the 2012 Agreement and infringe Stanley's trademark rights.  PMI also maintains an active website, which itself breaches the 2012

Agreement and infringes Stanley's trademark rights in multiple ways (as described above and below) and where consumers in Connecticut can directly purchase infringing PMI products.

19.     Venue is proper in this District under 28 U.S.C. § 1391(b)-(d).

## IV.     FACTUAL BACKGROUND

**A.     Stanley's Trademark Rights**

20.     Stanley was founded by Frederick T. Stanley in 1843 as a hardware manufacturing business in New Britain, Connecticut.  Over the last two centuries, Stanley has invested millions of dollars to develop and market its business to become one of the world's leading companies.  Because of those investments, STANLEY has become synonymous with three core values: quality, durability, and innovation, the foundation on which the success of Stanley's business was built.  As a result of Stanley's hard-earned reputation over more than 180 years, STANLEY has become synonymous with strength and prestige.

21.     Stanley has protected the stellar reputation of its business through more than a dozen registered United States trademarks covering a wide range of goods since as early as 1907. Stanley owns registrations for a family of trademarks associated with STANLEY, including the following U.S. Trademark Registration Nos. (collectively, the "Stanley Registrations"), each of which includes STANLEY:

| | | |
|---|---|---|
| 66,675 | 1,361,937 | 3,759,308 |
| 67,119 | 1,466,166 | 3,958,147 |
| 178,322 | 1,916,003 | 7,101,322 |
| 690,773 | 2,650,061 | 7,101,323 |
| 706,231 | 2,908,883 | 7,169,142 |
| 1,273,354 | 2,959,921 | 7,230,766 |
| 1,360,127 | | |

6

22.     The Stanley Registrations are in full force and effect.  Many of the marks protected by the Stanley Registrations have become incontestable pursuant to 15 U.S.C. § 1065.

23.     Since its founding, Stanley has continuously marketed and commercialized a wide range of products nationwide under STANLEY, including in the classes of the Stanley Registrations, including hand and power tools, measuring implements, storage equipment, clothing (for both adults and children), footwear, watches, and even children's toys.  Stanley has invested millions of dollars in advertising and promoting its STANLEY-branded products in the United States, including through marketing events, testimonials, and advertisements in a wide variety of magazines and newspapers, on television, on its website, and on social media platforms.

**B.    <u>The Parties' Contractual History</u>**

24.     In July 1966, Stanley and PMI's predecessor, Aladdin, entered into the 1966 Agreement to "avoid any confusion in the use of the trademark STANLEY."  Among other provisions, the 1966 Agreement required Aladdin and its successors to (1) "confine its use of the trademark STANLEY to insulated containers adapted to keep their contents hot or cold, and … ***not [to] extend the use of such trademark to other goods***"; and (2) include "Aladdin," "Aladdin's," or an abbreviation of its corporate name on any "goods, advertisements, [or] literature" which bear the STANLEY mark (all emphasis throughout this complaint is added unless otherwise noted).

25.     On July 3, 1990, the parties amended the 1966 Agreement to further clarify the parties' obligations (the "1990 Amendment").  Aladdin agreed to either withdraw and re-file a new application, or otherwise amend its then-pending trademark application, from STANLEY to ALADDIN-STANLEY.

26.     Years later, after negotiations regarding PMI's repeated non-compliance with the 1966 Agreement, the parties entered into a new agreement in 2012 further clarifying the boundaries of PMI's permissible use of STANLEY.  In the 2012 Agreement, PMI agreed, among other things, that:

a)  "PMI's use of STANLEY shall be limited solely to use … to promote and sell insulated and non-insulated containers for food or beverages, and carrying cases for transporting the same" (Paragraph 1);

b)  "[W]henever PMI uses … STANLEY on advertisements, catalogs, Web sites, or press releases (collectively, 'Advertising Materials'), PMI will, prominently and at least once on each page of such Advertising Materials, display its full corporate name (i.e., 'Pacific Market International' or 'Pacific Market International, LLC') or PMI ('the PMI Name') in a manner that is readily visible to consumers" (Paragraph 2(a));

c)  "All press releases issued by or with PMI will clearly identify the company issuing the press release as 'Pacific Market International' or 'Pacific Market International, LLC'" (Paragraph 2(a));

d)  "Advertising Materials and Products, and any goods distributed at no charge for promotional purposes, that bear the STANLEY mark shall display the PMI Name adjacent to STANLEY and in a size ratio of at least 1:6 … in at least one readily visible instance in each piece of Advertising Material, on each Product, and on each good distributed at no charge for promotional purposes" (Paragraph 2);

e)  PMI must display the PMI name and PMI's web site address alongside STANLEY in various places on its products "in a readily visible and prominent manner" to consumers, including "at the time of purchase" (Paragraph 2(b));

f) PMI "is prohibited from … using STANLEY as a company name, division or proper noun (*e.g.*, 'At Stanley, we believe ….')" (Paragraph 3(a));

g) "PMI is prohibited from … [u]sing the ® trademark registration symbol with STANLEY unless PMI owns a registration for that trademark covering the associated goods" (Paragraph 3(c)); and

h) "PMI is prohibited from … [o]wning or using a domain name that incorporates Stanley unless: (a) the PMI Name is part of the domain name; and (b) the associated Web site only displays, promotes and/or sells insulated and non-insulated containers for food or beverages, and carrying cases for transporting the same" (Paragraph 3(h)).

27.     The parties further agreed that the "failure at any time to demand strict performance of any of the terms, covenants, or conditions set forth herein shall not be construed as a continuing waiver or relinquishment thereof and the Parties may at any time demand strict and complete performance by the other party of said terms, covenants, and conditions."

**C.**    **PMI's Wrongful Use of STANLEY**

28.     In willful and intentional violation of both the 2012 Agreement and Stanley's trademark rights, PMI adopted STANLEY and/or STANLEY 1913 as a tradename, house mark, and brand name; rebranded its company, business, and products as STANLEY and/or STANLEY 1913; used the domain name www.stanley1913.com; expanded its product offerings beyond food and beverage containers; and abandoned any effort to refer to itself as PMI or otherwise use its full corporate name or PMI in connection with its products, company name, domain name, press releases, and/or advertising materials as contemplated by the 2012 Agreement. In so doing, PMI violated multiple provisions of the 2012 Agreement and also infringed on Stanley's trademark rights in connection with all of PMI's products, every page of

its website, all of its social media and other advertising (including point-of-sale advertising), and virtually all of its consumer and public-facing communications, including press releases.

### Website and Domain Name

29.    PMI has adopted the company name and the brand or trade name STANLEY (or, sometimes, STANLEY 1913) in virtually every consumer and business interaction.

30.    PMI's website, webpages, and domain name infringed Stanley's trademark rights and violated the 2012 Agreement.  For example, and without limitation, PMI used a domain name and corporate email address—www.stanley1913.com and @stanley1913.com—that is confusingly similar to STANLEY to sell, distribute, and advertise its products and to correspond with consumers:



31.    Throughout PMI's website and other advertising materials, PMI presented its company and brand name using STANLEY (or, sometimes, STANLEY 1913)—mostly without ever mentioning PMI, and never prominently or readily visibly.



a)  For example, PMI's "About Stanley" page identified the company as STANLEY,
    explaining under the heading "Who We Are": "***Founded in 1913 …, Stanley*** has
    been there for generations of adventures. … Over 100 years later, a steady stream of
    products ***continues to honor the Stanley legacy***, keeping your warms warm and your
    colds cold."

b)  The website repeatedly described PMI as STANLEY, for example and without
    limitation, stating that "Stanley is defined by Creativity, Building and Invention,"
    explaining "Stanley's commitment to sustainability," referring to the "Stanley style"
    or "Stanley culture," describing customers as "Stanley consumers" and directing
    customers on how to obtain support regarding their "Stanley product," and using
    phrases like "Stanley order," "Stanley item," and/or "Stanley account."

c)  Products were often described on the website as those belonging to a company named
    STANLEY, by stating, for example and without limitation, "Stanley's water jug,"
    "***products purchased from Stanley***," and "Stanley's vacuum-insulated bottles."

d)  PMI described its business divisions, locations, employees, and job titles using
    STANLEY, for example and without limitation "Stanley Sales," "Stanley US
    Support," "Stanley's Shanghai office," "Stanley's Consumer Experience Manager,"
    "Stanley Brand Ambassador," "Stanley's affiliate network partner," and "Stanley
    team members."

e) PMI described the various commitments and values of PMI in ways that used STANLEY as a business name, for example and without limitation "sustainability *at Stanley*," "Stanley perks," "Stanley prioritizes recycled and upcycled materials" and "Stanley seeks suppliers that meet our high standards."

f) The PMI website further referred to itself as the "***Stanley website***," had a section called "Stanley Blogs," touted a customization program called "Stanley Create" to encourage "Stanley personalization," set up a program and fund for "Stanley Creators," advertised "Stanley favorites" and "Stanley bestsellers," set up a "Stanley Club," and encouraged consumers to sign up for "My Stanley," to "Explore Stanley" or "Shop Stanley," to "receive SMS updates, text STANLEY to 22936," and to "Join the Stanley community."

g) And in various sections describing PMI's policies, terms, warranties, and conditions, the website made clear that PMI is "***('Stanley', 'we', or 'us')*** *and/or that it is "dba Stanley*," and it further described various terms and policies as those belonging to "Stanley," for example and including without limitation "Stanley's warranty," "Stanley Customized-Product Terms of Sale," and "Stanley Mobile Messaging Terms."

h) The footer of PMI's website likewise read "©***STANLEY, All Rights Reserved***" and asserted copyright ownership on behalf of "STANLEY," with no indication that this referred to PMI.

i) In fact, PMI's website used the precise language that the 2012 Agreement ***explicitly identifies*** as exemplary prohibited language. Under the 2012 Agreement, "PMI is prohibited from … [u]sing STANLEY as a company name, division or proper noun

(e.g., '***At Stanley, we believe*** …')."  And yet, on its "Sustainability" webpage, PMI used that exact language: "***At Stanley, we believe*** that through invention and originality we create a more sustainable, less disposable life and world."



32.    The words "Pacific Market International" or "PMI" did not appear in PMI's domain name or on any of its PMI's webpages, save for being buried in the sections of webpages with the terms of legal policy documents, such as PMI's privacy policy.  Nor did the words "Pacific Market International" or "PMI" appear prominently and/or readily visibly anywhere on PMI's webpages or advertising, let alone on the webpages marketing PMI's food and beverage products.

33.    Only very recently on the website, the name "PMI" has been buried in one line in small font size at the very bottom of the site and also—as before—on pages consumers are less likely to interact with, such as the legal terms and policies pages.  Even now, the words "Pacific Market International" or "PMI" do not appear prominently and/or readily visibly anywhere on PMI's webpages or advertising, let alone on the webpages marketing PMI's food and beverage products.

34.    More recent iterations of PMI's webpages or other advertising sometimes substitute "Stanley" with "Stanley 1913," which equally violates the 2012 Agreement and Stanley's trademark rights.  To the extent PMI has recently rebranded itself as STANLEY 1913

(instead of just STANLEY), this change does nothing to mitigate the harm to Stanley and continues to breach of the 2012 Agreement and infringe of Stanley's trademark rights. The 2012 Agreement expressly prohibits PMI's use of STANLEY 1913 insofar as the Agreement prohibits PMI from "[o]wning or using a domain name that incorporates Stanley unless … the PMI Name is part of the domain name," "using STANLEY as a company name, division or proper noun," not "prominently and at least once on each page of such Advertising Materials, display[ing] its full corporate name (i.e., 'Pacific Market International' or 'Pacific Market International, LLC') or PMI ('the PMI Name') in a manner that is readily visible to consumers," and not "display[ing] the PMI Name adjacent to STANLEY and in a size ratio of at least 1:6 … in at least one readily visible instance in each piece of Advertising Material, on each Product, and on each good distributed at no charge for promotional purposes." Nor does the addition of "1913" resolve consumer confusion, as STANLEY 1913 does not identify PMI as a source or origin. In fact, PMI's adoption of STANLEY 1913 increases likely consumer confusion with Stanley, as Stanley is well-known as a venerable, established American company that prides itself on its long history. Furthermore, STANLEY 1913 uses STANLEY as a company or brand name that was founded or created in 1913, and it improperly suggests to consumers that PMI (not Stanley) was the senior user, and that PMI (not Stanley) was first in the marketplace with STANLEY goods.

**Social Media**

35.     PMI's social media pages also infringed Stanley's trademark rights and violated the 2012 Agreement. PMI's social media pages, including but not limited to Instagram, TikTok, Twitter/X, and YouTube, likewise identified the company's brand and trade name as STANLEY or STANLEY 1913—with no mention of PMI:









36.     To make matters worse, PMI used the handle "*@StanleyBrand*," including but not limited to on Instagram, TikTok, YouTube, and Twitter/X, with no mention of PMI.  By using "@StanleyBrand" as its handles, PMI was further using STANLEY as a company name, brand name, or proper noun for social media purposes in violation of the 2012 Agreement and Stanley's trademark rights.

**Press Releases and Statements**

37.     PMI repeatedly violated Stanley's trademark rights and the provisions in the 2012 Agreement requiring that "[a]ll press releases issued by or with PMI will clearly identify the company issuing the press release as 'Pacific Market International' or 'Pacific Market International, LLC.'"   PMI repeatedly issued press releases that never mentioned PMI, Pacific Market International, or Pacific Market International, LLC, including in the following examples without limitation:

a)  https://www.prnewswire.com/news-releases/stanley-announces-launch-of-inaugural-creators-fund-grant-program-301917796.html

b)  https://www.prnewswire.com/news-releases/inaugural-stanley-creators-fund-grants-250-000-to-non-profit-organizations-to-champion-inspiring-leaders-302057680.html

c) https://www.prnewswire.com/news-releases/stanley-announces-second-annual-stanley-creators-fund-grant-opportunity-302239837.html

38.     PMI also routinely and repeatedly deflected blame for adverse events or bad press by omitting any mention of PMI from its press releases and statements.  For example, when there was widespread reporting of concerns that PMI's products contain lead, PMI issued the following corporate statement from STANLEY:

---

**Do Stanley products contain lead?**

At Stanley, one of the key features of our products is our vacuum insulation technology, which provides consumers with drinkware that keeps beverages at the ideal temperature. The vacuum insulation in our products has been sealed using an industry standard process that includes pellets, some of which include some lead, and all of which are covered with a durable stainless-steel layer, making them inaccessible to consumers.

All Stanley products are safe. Rest assured that no lead is present on the surface of any Stanley product that comes into contact with the consumer nor the contents of the product.

If the base cap comes off during ordinary use, the product may be eligible for our Lifetime Warranty, available here: **www.stanley1913.com/pages/contact-warranty** (https://url.us.m.mimecastprotect.com/s/El8oCmZnGJh08JyXsOsOMa?domain=urldefense.com).

Stanley ensures that its products meet all US regulatory requirements, including CA Proposition 65. Stanley tests for and validates compliance on all products through FDA-accredited 3rd party labs that verify our products follow strict guidelines, including BPA/BPS, PFOS, and phthalate regulatory requirements, among others.

---

Similarly, when PMI products were recalled due to potential burn hazards, PMI issued press releases and statements that nowhere referred to PMI, Pacific Market International, or Pacific Market International, LLC, and instead described the company as STANLEY or STANLEY 1913.

---

## Stanley 1913 Lid Recall

Stanley 1913 is voluntarily recalling the Switchback [12 oz and 16 oz] and Trigger Action [12 oz, 16 oz and 20 oz] Travel Mugs in cooperation with the U.S. Consumer Product Safety Commission (CPSC), because the lid threads can shrink when exposed to heat and torque, causing the lid to detach during use, posing a burn hazard.

We ask all our customers currently in possession of the Switchback or Trigger Action travel mugs to immediately stop use of these products and complete a registration for a free replacement lid.

---

The U.S. Consumer Product Safety Commission described the company conducting the recall as "Stanley."  *See* https://www.cpsc.gov/Recalls/2025/Stanley-Recalls-2-6-Million-Switchback-and-Trigger-Action-Travel-Mugs-Due-to-Burn-Hazard ("Stanley Recalls 2.6 Million Switchback and Trigger Action Travel Mugs Due to Burn Hazard… Consumers should immediately stop using the recalled travel mugs and contact Stanley to receive a free replacement lid, including shipping… Stanley has received 91 reports worldwide, including 16 in the U.S., of the recalled travel mugs' lids detaching during use.").

39.    In other instances, PMI repeatedly and deliberately obscured that PMI was the company issuing the press release, including for example and without limitation: https://www.prnewswire.com/news-releases/stanley-1913-announces-multi-year-partnership-with-the-brand-of-legendary-athlete-leo-messi-302312959.html (containing only a footer indicating PMI "conducts business as Stanley 1913").

**<u>Other Advertising</u>**

40.    PMI also infringed Stanley's trademark rights and violated the 2012 Agreement by publishing advertising materials—including marketing, promotional, and point-of-sale materials, websites and webpages, blogs, and social media handles and posts—that prominently featured STANLEY or STANLEY 1913 as its brand, trade name, and/or company name without also displaying "PMI" in any of the ways that the 2012 Agreement repeatedly requires.  For

example and without limitation, PMI's advertising materials did not display PMI "prominently

and at least once on each page … in a manner that is readily visible to consumers" and,

separately, also did not "display the PMI Name adjacent to STANLEY and in a size ratio of at

least 1:6 … in at least one readily visible instance in each piece of Advertising Material."  Upon

information and belief, "PMI" was not present at all on any recent PMI advertising materials

prior to January 2025 and, instead, each of PMI's advertising materials referred to the company

as STANLEY (or STANLEY 1913).







**Food and Beverage Containers**

41.     PMI also infringed Stanley's trademark rights and violated the 2012 Agreement by using STANLEY or STANLEY 1913 repeatedly on all of its products without displaying PMI on each product in a manner that was readily visible, adjacent to STANLEY, and/or in a size ratio of at least 1:6, as the 2012 Agreement requires.

42.     For example and without limitation, all of PMI's products—including PMI's core Quencher Tumbler product—displayed the STANLEY mark with a trademark registration symbol on the face of the product without, for example, also displaying the PMI name adjacent to the STANLEY name in a "readily visible" manner and in a size ratio of at least 1:6, in violation of the 2012 Agreement.



43.     Additionally, all of PMI's products—including Quencher Tumblers—displayed STANLEY without also including "the PMI Name adjacent to STANLEY permanently affixed onto the bottom of each Product and in a readily visible and prominent manner" **and** "PMI's website address (URL) permanently affixed onto the bottom of each Product in a readily visible

and prominent manner" *and* "the PMI Name adjacent to STANLEY in a manner that is prominent and readily visible to consumers at the time of purchase on one or more of the following: hang tags affixed to the Products, wraps affixed to the Products, Product packaging, or labels affixed to the Products," *and* "either the PMI Name permanently affixed multiple times around the bottom perimeter of each Product in a readily visible and prominent manner, or the PMI Name in a readily visible and prominent manner imprinted on the UPC label affixed to the bottom of each Product," as the 2012 Agreement requires.

44.    PMI even marketed and advertised numerous products using STANLEY as a company or brand name—including but not limited to the Stanley Cross Bottle, Stanley Quencher, Stanley Flask, Stanley Growler, the Stanley Essentials Case, Stanley Stein, Stanley Bottles, Tumbler and Barware, and the Stanely All Day Collection— and it did so without ever mentioning PMI, much less prominently, readily visibly, or in any of numerous other ways that the 2012 Agreement required.

45.    PMI also did not display the PMI name adjacent to STANLEY in a manner that is prominent and readily visible to consumers at the time of purchase, including on packaging, labels, hang tags, or wraps of PMI's products, as the 2012 Agreement requires at point of sale.







PMI's website offered PMI products—including Quencher Tumblers—for sale without any

mention of PMI.





46.    On information and belief, PMI failed to comply with **any** of the restrictions and limitations in the 2012 Agreement relating to "[p]roducts … that bear the STANLEY mark" and "products sold by PMI bearing the STANLEY mark."

**Goods Other Than Food and Beverage Containers**

47.     PMI also launched—and continues to launch—an ever-expanding portfolio of products that use STANLEY or STANLEY 1913, in breach the 2012 Agreement and in infringement of Stanley's trademark rights.  PMI impermissibly expanded its use of STANLEY on product offerings beyond food and beverage containers.  For example and without limitation, PMI improperly uses, or has used, STANLEY in violation of the 2012 Agreement and Stanley's trademark rights, on hundreds, if not thousands, of goods other than food and beverage containers, including but not limited to STANLEY-branded apparel:









The 2012 Agreement expressly limits PMI's use of STANLEY "solely to use as a trademark to promote and sell insulated and non-insulated containers for food or beverages, and carrying cases for transporting the same."    PMI even placed trademark registration symbols next to the STANLEY name on apparel in violation of the requirement that "PMI is prohibited from using the ® trademark registration symbol with STANLEY *unless* PMI owns a registration for that trademark covering the associated goods," which it does not for apparel goods.

48.    PMI's actions described herein above and below materially breach the parties' 2012 Agreement and separately infringe Stanley's trademark rights.  Because of PMI's misuse of STANLEY, consumers are left with the confusing impression that PMI's products using STANLEY or STANLEY 1913 originate from Stanley.  PMI's breach of the 2012 Agreement and violation of Stanley's trademark rights has already caused substantial actual consumer confusion and is likely to cause consumer confusion in the future.  As only one example, as

recently as December 18, 2024, a reporter for *The New Yorker* contacted Stanley seeking

comment for an article regarding the Consumer Product Safety Commission's recall of 2.6

million of PMI's STANLEY-branded travel mugs due to burn hazards.  The significant amount

of actual confusion shows that PMI's unlawful use of STANLEY, in violation of the 2012

Agreement and Stanley's trademark rights, has already irreparably damaged—and is likely to

continue to irreparably damage—Stanley's hard-earned goodwill and reputation by incorrectly

associating PMI's faulty products with Stanley in the minds of consumers.

**D.     Stanley's Notice to PMI**

49.     On August 22, 2024, Stanley reached out to PMI and asked PMI to comply with

the 2012 Agreement and cease its infringement of Stanley's trademark rights.  On September 13,

2024, after hearing no response from PMI, Stanley sent a second letter highlighting that PMI

failed to promptly and in good faith address the matters raised in the Notice Letter.  The second

letter also identified additional new actions taken by PMI that continued and expanded its misuse

of STANLEY in violation of the 2012 Agreement.  For example, PMI launched a new campaign

on September 16—*after* Stanley sent the first letter to PMI—with Mattel, Inc., titled "BARBIE x

STANLEY," and launched at least two new colorways for the breaching and infringing products,

"Pumpkin Spice, and "Almond Rose."

50.     Despite Stanley's good faith efforts since August 2024 to resolve these disputes,

PMI has failed to modify its behavior to comply with the 2012 Agreement and/or to respect

Stanley's trademark rights.  Instead, PMI willfully and intentionally continued to take actions

that violated Stanley's contractual and trademark rights related to STANLEY.  As noted above,

PMI made some immaterial and irrelevant changes to its website and advertising, which continue

to breach the 2012 Agreement and infringe Stanley's trademark rights.  By way of further

example, following the recall of PMI's products in December 2024, PMI's response has

affirmatively created rather than dissipated confusion—PMI deliberately avoided the use of

"PMI" in its communications, statements, and press releases related to the recall, thereby

breaching the 2012 Agreement and misleading the public, media, and consumers into thinking

that *Stanley's* products were recalled.  Stanley is therefore compelled to enforce the 2012

Agreement and its trademark rights by seeking relief through this Court.

## V.    CAUSES OF ACTION

### Count I: Breach of Contract

51.    The allegations set forth in all prior paragraphs are incorporated by reference as if

fully set forth herein.

52.    The 2012 Agreement is a valid and enforceable contract under governing

Connecticut law.

53.    Stanley performed its obligations under the 2012 Agreement.

54.    By and through the conduct detailed above, PMI has materially breached and

continues to materially breach the 2012 Agreement, including, but not limited to, Paragraphs 1, 2

(including 2(a) and 2(b)), and 3 (including 3(a), 3(c), and 3(h)).

55.    As a direct and proximate result of PMI's material breach of contract, Stanley has

suffered damages.

56.    Additionally, as a direct and proximate result of PMI's material breach of

contract, Stanley has suffered, and will continue to suffer unless PMI is enjoined by this Court,

irreparable harm to its STANLEY brand and trademark rights, as well as its ability to control its

reputation, goodwill, and advantageous business relationships with its customers.

57.    There is no remedy at law adequate to prevent the threatened or actual irreparable

harm occasioned by PMI's breach of contract, thereby necessitating the entry of injunctive relief,

in addition to any other remedies afforded to Stanley in equity or at law.

## Count II: Unfair Competition (15 U.S.C. § 1125(a))

58.    The allegations set forth in all prior paragraphs are incorporated by reference as if fully set forth herein.

59.    STANLEY is inherently distinctive or has acquired secondary meaning among the public associating Stanley and its products with STANLEY.

60.    By and through the conduct detailed above, consumers are likely to be confused, mistaken, or deceived as to the affiliation, connection, and/or association of PMI's products and services with Stanley or Stanley's products, or as to the origin, sponsorship, or approval of PMI's products and services, and/or as to the nature, characteristics, or qualities of Stanley's products.

61.    PMI's conduct, including as described above, has constituted and continues to constitute unfair competition in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

62.    PMI's conduct, including as described above, exceeded the scope of the 2012 Agreement, despite Stanley's notices to PMI, and continues to exceed the scope of the 2012 Agreement, and PMI is thereby willfully and intentionally infringing Stanley's trademark rights.

63.    Because of PMI's conduct, Stanley has suffered, and will continue to suffer, unless PMI's conduct is  enjoined, *inter alia*, actual damages and/or irreparable harm, as to which it has no adequate remedy at law.

## Count III: Trademark Infringement (15 U.S.C. § 1114(a))

64.    The allegations set forth in all prior paragraphs are incorporated by reference as if fully set forth herein.

65.    The Stanley Registrations identify marks that are registered with the United States Patent & Trademark Office.  Each of the Stanley Registrations identifies a mark including STANLEY.

66.    Stanley owns the marks corresponding to the Stanley Registrations.

67.    By and through the conduct detailed above, PMI has caused, and will continue to cause, confusion, mistake, or deception as to the source, origin, or sponsorship of PMI's products and services.  PMI's unauthorized use of STANLEY in commerce in the United States, including as alleged above, constitutes trademark infringement in violation of Section 32 of the Lanham Act, 15 U.S.C. § 1114(a).

68.    PMI's conduct, including as described above, exceeded the scope of the 2012 Agreement, and continues to exceed the scope of the 2012 Agreement, and PMI is thereby willfully and intentionally infringing Stanley's federally registered trademarks.

69.    Because of PMI's conduct, Stanley has suffered, and will continue to suffer unless PMI's conduct is enjoined, *inter alia*, actual damages and/or irreparable harm, as to which it has no adequate remedy at law.

### Count IV: Connecticut Common Law Trademark Infringement

70.    The allegations set forth in all prior paragraphs are incorporated by reference as if fully set forth herein.

71.    PMI's conduct, including as described above, constitutes trademark infringement in the violation of the common law of the State of Connecticut.

72.    Because of PMI's conduct, Stanley has suffered, and will continue to suffer unless PMI's conduct is enjoined, *inter alia*, actual damages and/or irreparable harm, as to which it has no adequate remedy at law.

### Count V: Connecticut Common Law Unfair Competition

73.    The allegations set forth in all prior paragraphs are incorporated by reference as if fully set forth herein.

74. PMI's conduct, including as described, constitutes unfair competition under the common law of the State of Connecticut.

75. Because of PMI's conduct, Stanley has suffered, and will continue to suffer unless PMI's conduct is enjoined, *inter alia*, actual damages and/or irreparable harm, as to which it has no adequate remedy at law.

## VI.     PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this Court:

1. Permanently enjoin PMI and its predecessors, successors, divisions, subsidiaries, and joint ventures thereof, together with any and all parent or affiliated companies or corporations, and all officers, directors, employees, attorneys, representatives, those acting in privity or concern with them, or on their behalf, from:

    a. All of the above described conduct and activities breaching the 2012 Agreement and/or infringing Stanley's trademark rights;

    b. Breaching any aspect of the 2012 Agreement;

    c. Directly or indirectly infringing Stanley's trademark rights;

    d. Using STANLEY as any part of its company, trade name, or brand name, including in press releases, on its website, and in advertising;

    e. Using the domain www.stanley1913.com or any other domain name that includes STANLEY without PMI in contravention of the 2012 Agreement;

    f. Using STANLEY on food and beverage containers without each instance of STANLEY being accompanied by "PMI" or "PACIFIC MARKET INTERNATIONAL" in a manner that satisfies the requirements of the 2012 Agreement;

    g.   Using STANLEY in connection with products that are not food and beverage containers, or carrying cases for transporting the same;

    h.   engaging in further unfair competition and unfair or deceptive acts or practices.

2.    Order specific performance by PMI of its obligations under the 2012 Agreement.

3.    Order PMI to: (a) prepare and send to its customers and the general public corrective statements approved by Stanley, correcting all false statements made and all misrepresentations made concerning the STANLEY brand; and (b) disclaim any association between PMI and Stanley and/or Stanley's products;

4.    Require PMI to take affirmative corrective measures, including but not limited to product recalls, corrective advertising measures, disclaimers, and the forfeiture and/or destruction of any infringing or breaching articles;

5.    Award Stanley actual damages it has sustained and/or disgorgement in an amount to be determined at trial;

6.    Award Stanley enhanced and punitive damages;

7.    Award Stanley prejudgment interest as well as its actual costs and attorneys' fees in this action;

8.    Enter judgment in favor of Stanley on each of its claims; and

9.    Grant to Stanley such other legal, equitable or other relief as may be just and warranted under the circumstances.

## VII.    JURY DEMAND

Plaintiffs demand a trial by jury on all issues presented in this Complaint.

Dated: February 18, 2025                 Respectfully submitted,

                                          /s/  Kevin M. Lamb  (#29944)

                                         Louis W. Tompros (*pro hac vice application to be filed*)
                                         WILMER CUTLER PICKERING
                                            HALE AND DORR LLP
                                         60 State Street
                                         Boston, MA 02109
                                         Tel: (617) 526-6886
                                         Fax: (617) 526-5000
                                         louis.tompros@wilmerhale.com

                                         Omar A. Khan (*pro hac vice application to be filed*)
                                         WILMER CUTLER PICKERING
                                            HALE AND DORR LLP
                                         7 World Trade Center
                                         250 Greenwich Street
                                         New York, NY 10007 USA
                                         Tel: (212) 937-7252
                                         Fax: (212) 230-8888
                                         omar.khan@wilmerhale.com

                                         Kevin M. Lamb (#29944)
                                         WILMER CUTLER PICKERING
                                            HALE AND DORR LLP
                                         2100 Pennsylvania Ave. NW
                                         Washington, D.C. 20006
                                         Tel: (202) 663-6249
                                         Fax: (202) 663-6363
                                         kevin.lamb@wilmerhale.com

                                         *Attorneys for Plaintiffs*